**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| SHARON SUZANNE SHEPHERD,<br>Plaintiff<br><br>v.<br><br>NOVO NORDISK, INC. and NOVO NORDISK A/S,<br>Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:26-cv-08605 |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

1. Full (first, middle, and last) name of Plaintiff injured due to use of GLP-1 RA Product(s): ________Sharon Suzanne Shepherd________.

2. If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: ________N/A________, as ____________________ of the estate of ____________________, deceased.

3. If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): ________N/A________.

4. If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: ________N/A________.

**Defendant(s)**

5. Plaintiff is suing the following Defendant(s) (check all that apply):

__X__ Novo Nordisk Inc.

__X__ Novo Nordisk A/S

_____ Eli Lilly and Company

_____ Lilly USA, LLC

_____ other(s) (identify): ____________________________________

**JURISDICTION AND VENUE**

6. City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Plaintiff is a citizen of the United States, a citizen of the State of Louisiana, and a resident of the city of Monroe, Louisiana.

7. State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

Plaintiff's physician prescribed Ozempic that was used by Plaintiff in the State of Louisiana.

8. State of Plaintiff's residence at time of her use of the GLP-1RA Product(s) at issue:

Plaintiff was a citizen of the State of Louisiana at the time of her GLP-1 RA use.

9. City and state of Plaintiff's residence at time of diagnosis of injury:

Plaintiff resided in Monroe, Louisiana at the time of her diagnosis of her injury(ies).

10. Jurisdiction is based on:

__X__ diversity of citizenship pursuant to 28 U.S.C. § 1332

_____ other (plead in sufficient detail as required by applicable rules):

________________________________________

11. The District Courts where Plaintiff might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

United States District Court for the Western District of Louisiana

12. Venue is proper in the District Court identified in Paragraph 11 because:

__X__ a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____ other (plead in sufficient detail as required by applicable rules): ______________________________________________________________

13. If applicable, identify the citizenship of any additional Defendant(s) named above: ______________________________________________________________

## PRODUCT USE

14. Plaintiff used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

__X__ Ozempic (semaglutide)

_____ Wegovy (semaglutide)

_____ Rybelsus (oral semaglutide)

_____ Victoza (liraglutide)

_____ Saxenda (liraglutide)

_____ Trulicity (dulaglutide)

_____ Mounjaro (tirzepatide)

_____ Zepbound (tirzepatide)

_____ Other(s) (specify): ______________________________________________

15. To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Plaintiff used Ozempic, manufactured by Novo Nordisk A/S, et al., from in or about April 2024 until in or about April 2026 .

## INJURIES AND DAMAGES

16. To the best of Plaintiff's knowledge, as a result of using GLP-1 RA Product(s), Plaintiff suffered the following injuries, including their sequelae (check all that apply):

_____ Gastroparesis

__X__ Other gastro-intestinal injuries (specify) Intractable nausea and vomiting, diarrhea, and abdominal pain

_____ Ileus

__X__ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

_____ Gallbladder Injury (specify) ____________________

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

__X__ Additional/Other(s) (specify): Removal of colon/colostomy

17. Plaintiff's injuries occurred in approximately (month and year)?

After beginning Ozempic use, Plaintiff suffered from nausea, vomiting, diarrhea, and abdominal pain. She was diagnosed with ischemic colitis and in or about February 2026, underwent surgery, to remove her large colon. In connection with the colon resection, an end transverse colostomy was performed.

18. In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the

following damages (check all that apply):

__X__ Injury to self

_____ Injury to person represented

__X__ Economic loss

_____ Wrongful death

_____ Survivorship

_____ Loss of services

_____ Loss of consortium

_____ other(s) (specify): ________________________________________

**CAUSES OF ACTION**

19. In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

_____ Count I: Failure to Warn – Negligence

_____ Count II: Failure to Warn – Strict Liability

_____ Count III: Breach of Express Warranty/Failure to Conform to Representations

_____ Count IV: Breach of Implied Warranty

_____ Count V: Fraudulent Concealment/Fraud by Omission

_____ Count VI: Fraudulent/Intentional Misrepresentation

_____ Count VII: Negligent Misrepresentation/Marketing

_____ Count VIII: Strict Product Liability Misrepresentation/Marketing

_____ Count IX: Innocent Misrepresentation/Marketing

_____ Count X: Unfair Trade Practices/Consumer Protection (see below)

_____ Count XI: Negligence

_____ Count XII: Negligent Undertaking

__X__ Count XIII: State Product Liability Act (see below)

_____ Count XIV: Wrongful Death

_____ Count XV: Loss of Consortium

_____ Count XVI: Survival Action

__X__ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

Count XVII: Cause of Action for Redhibition, La. C.C. art. 2520, et seq.

*See* Exhibit A

20. If Plaintiff is asserting a claim pursuant to the unfair trade practices _or consumer protection statutes of any jurisdiction as identified in Count X above:*

a. Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

N/A

b. Identify the factual allegations supporting those claims (by subsection, if applicable):

N/A

** Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21. If Plaintiffs is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

a. Indicate the specific statute (including subsections) under which Plaintiff is

bringing such claims:

The Louisiana Products Liability Act ("LPLA") is codified in the Louisiana Revised Statutes at Title 9, Sections 2800.51 through 2800.60 (La. R.S. § 9:2800.51, *et seq.*), and serves as the legal remedy for people hurt by defective products in the state. Plaintiff brings her claims under the LPLA and more specifically through La. R.S. §§ 9:2800.52 (Scope of Chapter), 9:2800.57 (Inadequate Warning) 9:2800.58 (Breach of Express Warranty); 9:2800.2A:58C-1 (Findings; definitions) and 2A:58C-2 (Liability of manufacturer or seller in product liability action). *See* Exhibit "B."

b. Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

The LPLA subsumes Failure to Warn–Negligence (Count 1); Failure to Warn–Strict Liability (Count II); Breach of Express Warranty (Count III); Breach of Implied Warranty (Count IV); Fraudulent Concealment (Count V); Fraudulent Misrepresentation (Count VI); Negligent Misrepresentation/ Marketing (Count VII); Strict Product Liability Misrepresentation/Marketing (Count VIII); Innocent Misrepresentation (Count IX); Negligence (Count XI); and Negligent Undertaking (Count XII).

c. Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1 RA Product(s) produced defective Product(s) that were unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to be safer, and that would cause injury as produced and sold. Defendants also

failed to provide adequate warnings or information with regard to their products and misled consumers, including Plaintiff, as well as consumers' physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff, who was overweight and diagnosed with diabetes, was prescribed Ozempic. Plaintiff was exposed to advertisements regarding the weight loss advantages of Ozempic which omitted and/or downplayed the risks of using the medication. Instead, the ads made statements of "no increased risk." Plaintiff discontinued her Ozempic use after suffering from nausea, vomiting, diarrhea, abdominal pain, and ischemic colitis which required removal of her large colon and colostomy placement.

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I: Failure to Warn – Negligence (paragraphs 606-640)

Count II: Failure to Warn – Strict Liability (paragraphs 641-674)

Count III: Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV: Breach of Implied Warranty (paragraphs 699-720)

Count V: Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI: Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX: Innocent Misrepresentation/Marketing (paragraph 849)

Count X: Unfair Trade Practices/Consumer Protection (paragraphs 850-865)

Count XI: Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)

See also the Factual Allegations Section of the *Master Complaint*.

** Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22. If pre-suit notice is required by statute, did Plaintiff(s) provide some form of separate pre-suit notice to Defendant(s)? N/A . If so, attach such notice.

## RELIEF

Plaintiff(s) pray(s) for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff(s) may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.

Date: October 21, 2026 By: ______________________

Kristie M. Hightower (LA Bar #31782)
Lundy LLP
501 Broad Street
Lake Charles, LA 70601
khightower@lundyllp.com
T: (337) 439-0707 | F: (337) 439-1029

*Counsel for Plaintiff*

# EXHIBIT A

**REDHIBITION SUPPLEMENT - COUNT XVII**

1. Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, as though set forth fully at length herein.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3. Defendants are the developer, manufacturer, marketer, and seller of the prescription drug Ozempic within the meaning of Louisiana law.

4. Pursuant to Louisiana Civil Code 2520, a manufacturer or seller in Louisiana implicitly warrants the buyer against redhibitory defects or vices in the thing sold. A defect is redhibitory when it renders the product useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the product had they known of the defect.

5. Under well-established Louisiana jurisprudence, a claim for Redhibition survives independently of the Louisiana Products Liability Act ("LPLA") when a plaintiff seeks purely economic losses rather than personal injury damages. *See, e.g., Aucoin v. Southern Quality Homes, LLC, 984 So. 2d 685, 691 n. 8 (La. 2008)* (recognizing the "peculiar doctrine of redhibition" as an exception to LPLA exclusivity for economic loss).

6. At the time Ozempic left Defendants' control and was purchased by or on behalf of Plaintiff, it possessed a redhibitory defect. Specifically, the product possessed undisclosed, dangerous propensities—including but not limited to severe gastrointestinal risks such as gastroparesis, intestinal obstruction, and related complications—which were hidden from Plaintiff and Plaintiff's prescribing physicians.

7. The presence of these latent, undisclosed risks rendered Ozempic unreasonably dangerous, unfit for its intended use, and so inconvenient that it must be presumed Plaintiff would not have purchased or ingested the product had the true, hidden risks been properly disclosed by Defendant.

8. Defendant, as the product's manufacturer, is legally presumed to know of the vices and defects in the products it manufactures. *See* La. C.C. art. 2545. Because Defendant knew, or should have known, of the defects in Ozempic and failed to disclose them, Defendant is liable to Plaintiff as a bad-faith manufacturer.

9. As a direct and proximate result of Defendant's breach of the implied warranty against redhibitory defects, Plaintiff has suffered severe economic damages entirely independent of physical personal injuries.

10. Pursuant to La. C.C. art. 2250 and La. C.C. art. 2545, Plaintiff is entitled to a full rescission of the sale, including a return of the purchase price of the product, reimbursement of out-of-pocket medical or diagnostic expenses incurred because of the defect, reasonable attorneys' fees, court costs, and any other economic or consequential damages permitted under Louisiana sales law.

# EXHIBIT B

## STATE PRODUCTS LIABILITY ACT SUPPLEMENT - COUNT XIII

1. Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein, solely to the extent those factual disclosures support Plaintiff's exclusive remedies under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, et seq.

2. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff, and are "manufacturers" within the definition of La. R.S. 9:2800.53

3. Pursuant to La. R.S. 9:2800.52, the LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products, and Plaintiff brings these claims strictly within the statutory framework of the LPLA.

4. Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and possessed characteristic gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than communicated to the medical community and the public.

### Count XIII(A): LPLA –<br>Unreasonably Dangerous Because of Inadequate Warning (La. R.S. 9:2800.57)

5. Defendants' GLP-1 RA Products were unreasonably dangerous because, at the time the products left Defendants' control, they lacked an adequate warning about their dangerous characteristics, and Defendants failed to use reasonable care to provide an adequate warning to Plaintiff's prescribing physicians.

6. Under the Louisiana Learned Intermediary Doctrine, Defendants owed a continuous duty to provide an adequate warning to Plaintiff's prescribing physicians. Defendants failed in this

duty by withholding, omitting, and concealing the following material safety characteristics of the GLP-1 RA Products:

a. Risk of Severe GI Injuries: Concealing the true risk of persistent, debilitating, and chronic gastrointestinal conditions, including gastroparesis, severe vomiting, nausea, ileus, cholelithiasis, and the subsequent clinical necessity for gallbladder removal.

b. Inadequate Gastric Emptying Tests: Withholding the fact that Defendants' representations of a "minor" or "transient" gastric delay were based on inadequate liquid-only testing methods (such as the acetaminophen absorption test) which failed to accurately reflect the drug's profound and obstructive impact on solid food digestion.

c. Misleading Clinical Trial Data: Concealing that clinical trial data regarding the frequency and severity of GI side effects was artificially mitigated and skewed through the widespread, undisclosed administration of anti-emetic medications to trial participants.

d. Misleading and Inadequate Discontinuation Data: Omitting warnings that discontinuing the GLP-1 RA Product causes blood sugar levels to rapidly rebound, frequently rising to levels higher than documented prior to initiating the medication.

e. Rebound Effect Misrepresentations: Withholding clinical data showing that patients are highly likely to quickly regain lost weight

upon discontinuation, meaning any therapeutic benefit requires permanent, lifelong adherence to the medication.

f. Lean Muscle Mass Loss: Failing to warn that a disproportionate and medically deleterious percentage of the total weight lost consists of lean muscle mass rather than fat.

7. Defendants possessed actual or constructive knowledge of these hidden characteristics but failed to update their labeling or warn the medical community. Had Plaintiff's prescribing physicians been provided an adequate, truthful, and non-misleading warning regarding these severe risks, they would not have prescribed the GLP-1 RA Products to Plaintiff or would have altered Plaintiff's treatment and monitoring protocol to prevent injury.

8. As a direct and proximate result of the inadequate warnings, Plaintiff used the product and suffered severe physical bodily injuries, pain and suffering, loss of a normal life, and incurred substantial medical expenses.

**Count XIII(B): LPLA –**
**Unreasonably Dangerous Due to Breach of Express Warranty (La. R.S. 9:2800.58)**

9. As a direct and proximate result of the inadequate warnings, Plaintiff used the product and suffered severe physical bodily injuries, pain and suffering, loss of a normal life, and incurred substantial medical expenses.

10. At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

11. Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

12. Defendants knew their representations regarding the drugs' safety, efficacy, and side-

effect profile were material to the decisions of patients and prescribers.

13. Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

14. Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Risk of Severe GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b. Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c. Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d. Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will

likely rise, and can even become higher than they were before starting the medication.

e. "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f. "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which can lead to negative health outcomes.

15. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

16. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

17. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably

relied:

a. Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the GLP-1s' safety profiles generally. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers GLP-1 Products were completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the Product and/or other GLP-1 Products. Defendants' follow-up television commercials continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk."

c. Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

18. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

19. Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

20. As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need

for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.